# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 24-1300C
(Filed: March 26, 2025)

|  |  |
|---|---|
| **ART SCHAAP**, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*Patrick J. Lanciotti*, Napoli Shkolnik PLLC, New York, NY, for plaintiffs.

*Young A. Kang*, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant. With him on the briefs was *Adam R. F. Gustafson*, Acting Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC.

**OPINION AND ORDER**

**BONILLA, Judge**.

Plaintiffs are twenty-eight owners or tenants of land near Cannon Air Force Base, located in Curry County, New Mexico. Through this action, plaintiffs claim the government took their property without just compensation in violation of the Fifth Amendment to the United States Constitution. In support, plaintiffs cite the military's reported handling and disposal of perfluoroalkyl and polyfluoroalkyl substances (PFAS), polluting and threatening the local soil and water supply. Collectively, plaintiffs seek damages totaling $400 million.

Critical here, prior to commencing this action, several plaintiffs filed suit in federal district court under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). That case remains pending. Others fail to allege that the synthetic "forever chemicals" have sufficiently invaded their property. Citing these undisputed facts, and further

arguing that all plaintiffs' claims sound in tort, defendant seeks dismissal of the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6), respectively, of the Rules of the United States Court of Federal Claims (RCFC). For the reasons set forth below, defendant's dispositive motion is GRANTED.

## BACKGROUND

The United States Navy first developed aqueous film-forming foam (AFFF) in the 1960s to fight shipboard fires.[1] AFFF is particularly effective at containing and extinguishing fires involving high-hazard flammable liquid, including jet fuel. However, the fire suppressant contains synthetic chemical compounds—referred to collectively as PFAS and colloquially known as "forever chemicals"—which have been designated by the United States Environmental Protection Agency (EPA) in recent years as toxic and hazardous to human health.[2, 3] Quantifying the potential health risks of ingestion, the EPA issued a lifetime health advisory for PFAS in 2016 at seventy parts per trillion.[4] Effective June 25, 2024, the EPA issued a PFAS National Primary Drinking Water Regulation setting the maximum contaminant level at four parts per trillion.[5]

Plaintiffs allege that between 1970 and 2018, officials at Cannon Air Force base released nearly eighteen million gallons of PFAS compound solutions "during training exercises, base operations, equipment maintenance, through both controlled and unplanned releases, etc. into the earth and into its surface waters of Curry County, New Mexico." ECF 7 at 5. In support of their claims, plaintiffs cite the government's August 24, 2018 notice to neighboring property owners that PFAS was detected on the military base. Soil samples collected around that time revealed that three of the twenty-five locations tested had PFAS concentrations above the seventy parts per trillion threshold established by the EPA in 2016. In 2019, the Air Force released an aerial map demarking the "Zone of Concern" for PFAS contamination and

---

[1] *See In re Aqueous Film-Foaming Prods. Liab. Litig.*, No. 18-2873, 2022 WL 4291357, at *1–2 (D.S.C. Sept. 16, 2022).

[2] PFAS generally refers to six per- and polyfluoroalkyl substances: perfluorooctanoic acid (PFOA), perfluorooctane sulfonic acid (PFOS), perfluorohexane sulfonic acid (PFHxS), perfluorononanoic acid (PFNA), hexafluoropropylene oxide dimer acid (HFPO-DA, commonly known as GenX Chemicals), and perfluorobutane sulfonic acid (PFBS). *See* 89 Fed. Reg. 32,532 (Apr. 26, 2024).

[3] *See* Alaska Department of Environmental Conservation, Division of Spill Prevention and Response, *Per- and Polyfluoroalkyl Substances (PFAS)*, https://perma.cc/CWY9-DZVG (last visited Mar. 26, 2025); *Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances*, 89 Fed. Reg. 39,124-01 (May 8, 2024).

[4] *Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate*, 81 Fed. Reg. 33,250-01 (May 25, 2016).

[5] 89 Fed. Reg. at 32,532.

followed up four years later with mapping of the designated "Area of Presumed Contamination." ECF 7-1. The map below depicts an overlay of the impacted terrain:



ECF 7 (Exhibit A-2). The territory in orange represents the Area of Presumed Contamination and the yellow framing represents the Zone of Concern. Plaintiffs' properties and businesses are located in whole or in part within one or both.

Plaintiffs Art and S. Renee Schaap are general partners in Highland Dairy, which sits on 3,593 acres of land to the southeast of Cannon Air Force Base.[6] They attribute a decline in milk sales between 2009 to 2018 to the PFAS consumed by their cows. After discovering the connection in 2018, Highland Dairy went out of business because the United States Department of Agriculture (USDA) and the United States Food and Drug Administration (FDA) quarantined the dairy herd. Over the next four years, despite installing a water filtration system, the Schaaps' entire livestock either died or were euthanized.[7] The Schaaps further allege that the government began drilling wells on the property without permission in 2024. In total, the Schaaps seek damages in excess of $150 million.

Plaintiffs Sybrand R. and Jenise Kay Vander Dussen, along with their son and daughter-in-law—i.e., plaintiffs Daniel W. Vander Dussen and Tara McCrory Vander Dussen—own approximately 1,550 acres of land on the eastern fence line of Cannon Air Force Base. This land is commercially referred to as Rajen #1 Dairy. The elder

---

[6] The scant record presented suggests that the Schaaps lease rather than own the land upon which they manage their dairy farm.

[7] The USDA reportedly paid the Schaaps approximately $15 million in indemnity payments for the loss of livestock and milk.

Vander Dussens and their other two sons—i.e., plaintiffs Jonathan E. Vander Dussen and Sybrand J. Vander Dussen—own an additional 800 acres of land less than two miles from the Air Force base known as Rajen #2 Dairy. The Vander Dussens also own Sky View Dairy, which recently acquired a financial interest in DayStar Dairy, discussed below. As depicted in the map above, parts of all three properties are within the 2019 Zone of Concern and 2023 Area of Presumed Contamination. Following their receipt of the August 24, 2018 Air Force notice, the Vander Dussens tested the water supply at the two Rajen dairy farms, revealing "marginally acceptable" levels of PFAS at one facility and "trace amounts" of the forever chemicals at the other. ECF 7 at 11–12. Despite installing a filtration system at Rajen #1 Dairy, the Vander Dussens maintain that both dairy farms have been contaminated through irrigation using polluted groundwater and water from North Playa Lake, located on the east side of Cannon Air Force Base, as well as livestock excreta. The Vander Dussens seek damages exceeding $120 million.

Plaintiffs Todd and Carolyn Teune own approximately 640 acres of land located 1.5 miles east of Cannon Air Force Base. The Teunes operate a beef and dairy farm on the property known as DayStar Dairy, which is now partially owned by the Vander Dussens through Sky View Dairy. As depicted in the map above, DayStar Dairy is within the Zone of Concern and the Area of Presumed Contamination. Testing reportedly conducted in 2018 revealed the presence of PFAS, causing the Teunes to purchase a water filtration system.[8] The Teunes claim their land has been contaminated with the forever chemicals by livestock excreta and stormwater runoff. They further maintain that the designation of their land as a superfund site has diminished the property value and may shutter their business. The Teunes seek damages in excess of $40 million.

Plaintiffs Doug and Irene Handley, along with their son Dustin Handley, own approximately 860 acres of land southeast of Cannon Air Force Base and within the Zone of Concern and Area of Presumed Contamination. The Handleys are general partners in a beef and dairy farm known as Do-Rene Dairy—subject to a recent operations agreement reached with the Vander Dussens. Water testing conducted in 2018 revealed "marginally acceptable levels" of PFAS, prompting the installation of a filtration system. ECF 7 at 14. Like the other plaintiffs, the Handleys contend that their land is contaminated from stormwater runoff and livestock excreta. They further claim that the contamination of the area soil and water has diminished their property value and threatens their business. The Handleys seek damages of more than $40 million.

Plaintiffs Steve Hanson, Darrell Hanson, Darren Hanson, and Dean Van Dam own Desert Sun Dairy LLC, a cattle farm located three miles southeast of Cannon

---

[8] The complaint does not specify or otherwise quantify the amount of PFAS found in the soil or water, or state whether it exceeded EPA safety levels.

Air Force Base.[9]  Most of land falls within the Zone of Concern and the Area of Presumed Contamination.  Groundwater testing performed 2018 revealed the presence of PFAS below the 2016 EPA limits.  This group of plaintiffs similarly claim that the contamination of the area soil and water—attributed to stormwater runoff and livestock excreta—has diminished the value of their business.  They seek damages exceeding $40 million.

Plaintiff Roger Hatcher is the owner and developer of approximately twenty-four residential lots situated within the Norman Rose subdivision, approximately 1.5 miles east of Cannon Air Force Base.  Citing their location within the publicized Zone of Concern and Area of Proposed Contamination and the resulting stigma associated with the region, Mr. Hatcher claims that no units have sold since 2019.  Until recently, Mr. Hatcher also owned a residential property adjacent to the subdivision with his spouse Danette Hatcher.  Notwithstanding the absence of PFAS, the Hatchers reportedly sold the property in 2022 for half its assumed fair market value.  In total, the Hatchers seek damages in excess of $6.2 million.

Plaintiffs Paul A. and Sheri V. Lough own and reside in a home located about one mile southeast of Cannon Air Force Base.  Although no formal testing has been performed, the property falls within the publicized Zone of Concern and Area of Presumed Contamination.  The Loughs further cite the property's proximity to the presumed PFAS-contaminated Ogallala Aquifer.  The Loughs claim damages of more than $500,000.

Finally, plaintiffs Vance and Kimberly Dewbre own five acres of land located approximately 2.4 miles east of Cannon Air Force Base.  Their property houses multiple dwellings, including their primary residence.  Testing performed by the government in 2018 revealed PFAS levels above the EPA's current drinking water standard.  As shown above, the Dewbre property straddles the lines demarcating the Zone of Concern and Area of Presumed Contamination.  In recent years, the county government reportedly reduced the assessed value of the land by seventy-five percent due to the confirmed PFAS contamination.  The Dewbres seek damages exceeding $1.5 million.

## DISCUSSION

This matter must be dismissed for three independent yet overlapping reasons.  First, several claims filed in this Court relate to those being prosecuted in federal district court and are thus barred under 28 U.S.C. § 1500.  Second, the Court similarly lacks jurisdiction over concededly unripe claims.  Third, the entirety of the complaint sounds in tort and fails to allege a cognizable Fifth Amendment takings claim.

---

[9] The limited record presented does not state whether the Hansons and Mr. Van Dam own or lease the land upon which they operate Desert Sun Dairy.

## I. Standards of Review

This Court's statutorily prescribed jurisdiction to adjudicate claims and grant relief requires an affirmative waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). When the Court's authority to entertain a cause of action is challenged or otherwise called into question under RCFC 12(b)(1), the onus is on the plaintiff to present preponderant evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In evaluating the jurisdictional propriety of a claim, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1568–69 (Fed. Cir. 1993)).

In turn, when considering a motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6), courts "must accept as true all the factual allegations in the complaint and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). "A trial court should not dismiss a complaint for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.* (quotation marks omitted) (quoting *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989)). Assertions of legal conclusions are not credited during this assessment, and the complaint must include nonconclusory factual allegations setting forth a plausible–as opposed to merely a conceivable–claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

## II. SECTION 1500

Title 28, United States Code, Section 1500 provides that this Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500. This statute divests this Court of jurisdiction "where an earlier-filed suit is based on substantially the same operative facts . . . regardless of the relief sought in each suit." *Acetris Health, LLC v. United States*, 949 F.3d 719, 728–29 (Fed. Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)). The application of § 1500 is determined at the time the complaint is filed in this Court. *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993) ("[W]e read the statute as continuing to bar jurisdiction over the claim of a plaintiff who, *upon filing*, has an action pending in any other court 'for or in respect to' the same claim.") (emphasis added).

Prior to filing this action on August 23, 2024, the owners and operators of Highland Dairy, Rajen #1 and #2 Dairy, Sky View Dairy, Do-Rene Dairy, and DayStar

6

Dairy filed suit in the United States District Court for the District of South Carolina.[10]  *See Schaap v. United States*, No. 19-3288 (D.S.C. filed Nov. 21, 2019); *Dorene Dairy Gen. P'ship v. 3M Co.*, No. 20-4263 (D.S.C. filed Dec. 9, 2020); *Vander Dussen v. 3M Co.*, No. 20-4191 (D.S.C. filed Dec. 3, 2019); *Teune v. United States*, No. 19-3290 (D.S.C. filed Nov. 21, 2019).  Filed under the FTCA, the now-consolidated action charges that the military's use and disposal of AFFF at Cannon Air Force Base damaged their properties and businesses.  The United States is a defendant in each case, although certain plaintiffs are also suing PFAS manufacturers.  Critical here, the parallel district court litigation was pending at the time the identified plaintiffs filed suit in this Court.[11]  In direct contravention of § 1500, the claims of the above-identified plaintiffs are based on the same operative facts and seek duplicative relief as that asserted in the previously filed (and still pending) district court action.  As such, their claims are statutorily barred from proceeding in this Court.

### III.  RIPENESS

This Court lacks jurisdiction to entertain takings claims that are not ripe. *Martin v. United States*, 894 F.3d 1356, 1360 (Fed. Cir. 2018) (citing cases).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted).  In the Fifth Amendment context, ripeness is dependent upon a credible allegation—and eventual showing—that the government is in fact impinging upon a compensable property interest. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1358 (Fed. Cir. 2013).

All plaintiffs save the Schaaps (Highland Dairy) and the Dewbres concede their claims are not ripe and must be dismissed:

> With respect to the Non-Highland Plaintiffs, the Government is correct in one important respect.  While these plaintiffs have been alerted to the *possibility* of serious PFAS contamination on their property—and have been working diligently to determine the extent of that contamination and hold the Government accountable for its contribution—they have not yet been able to confirm the extent of the contamination through complete groundwater and soil testing.  Accordingly, the Non-Highland Plaintiffs concede that they do not have fully ripened claims and agree that, until they can make that showing, the Court must dismiss their claims for lack of jurisdiction (and without prejudice) under [RCFC] 12(b)(1).

---

[10] The individual plaintiffs in the parallel district court litigation include the Schaaps, the Vander Dussens, the Teunes, and the Handleys.

[11] In fact, the overlapping plaintiffs' FTCA claims survived the government's dispositive motion and remain pending as of the date of this decision.  *See Schaap v. United States*, No. 19-3288 (D.S.C. Feb. 27, 2025) (ECF 39).

ECF 17 at 6 (emphasis in original). Plaintiffs define the "Non-Highland Plaintiffs" as including the Vander Dussens (Rajen #1 and #2 Dairy and Sky View Dairy), the Teunes (DayStar Dairy), the Handleys (Do-Rene Dairy), the Hansons and Mr. Van Dam (Desert Sun Dairy), the Hatchers, and the Loughs. *Id.* at 1 n.1. Readily distinguishable from the excepted Schaaps (Highland Dairy) and the Dewbres, the identified group of Non-Highland Plaintiffs fail to allege PFAS contamination above "marginally acceptable levels" or "trace amounts."[12] Consistent with plaintiffs' concession, all claims save those of the Schaaps (Highland Dairy) and the Dewbres must be dismissed as not ripe.

### IV. TORT VS. TAKING[13]

The Dewbres do not have a parallel action pending in district court. Nor do they concede the issue of ripeness. Nevertheless, their claims must be dismissed as both sounding in tort and otherwise failing to assert a cognizable Fifth Amendment taking claim. Mindful of the teachings of the United States Court of Appeals for the Federal Circuit in *Moden v. United States*, 404 F.3d 1335 (Fed. Cir. 2005), the Court does so for failure to state a claim upon which relief can be granted under RCFC 12(b)(6) rather than lack of subject matter jurisdiction under RCFC 12(b)(1). *See Moden*, 404 F.3d at 1340–42.

A contamination-based inverse condemnation claim requires the application of the two-part tort-versus-taking test adopted in *Ridge Line, Inc. v. United States*, 346 F.3d 1346 (Fed. Cir. 2003): whether treatment under Fifth Amendment takings law is appropriate and, if so, whether plaintiff possessed a protectable interest in the property the government reportedly took. *See Moden*, 404 F.3d at 1342 (citing *Ridge Line*, 346 F.3d at 1355–56). To answer the first inquiry in the affirmative, a plaintiff must plausibly allege (and eventually establish) "either that the government intended to invade a protected property interest or that the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity." *Id.* (citing *Ridge Line*, 346 F.3d at 1355). Plaintiff must further charge and then "show that the invasion appropriated a benefit to the government at the expense of the property owner, at least by preempting the property owner's right to enjoy its property for an extended period of time, rather than merely by inflicting an injury that reduces the property's value."

---

[12] *Compare, e.g.*, ECF 7 at 11–12 (Rajen #1 Dairy: "marginally acceptable levels"; Rajen #2 Dairy: "trace amounts"), *and id.* at 14 (Do-Rene Dairy: "marginally acceptable levels"), *and id.* at 16 (DayStar Dairy: unquantified presence), *and id.* at 17 (Desert Sun Dairy: "below the limits established by the EPA in 2016"), *and id.* at 19 (Hatchers: no testing), *and id.* at 20 (Loughs: no testing), *with id.* at 9–10 (Highland Dairy: PFAS contamination levels sickened and killed livestock and destroyed farmland), *and id.* at 21 (Dewbres: "minimum detection levels . . . higher than EPA's current standard").

[13] Because the claims of all plaintiffs save the Dewbres must be dismissed under § 1500 and/or as not ripe, this section focuses on the Dewbres. However, the analysis set forth herein seemingly applies equally to all plaintiffs in this matter.

*Id.* (citing *Ridge Line*, 346 F.3d at 1356). The Dewbres fail to plead facts sufficient to satisfy this prong of the *Ridge Line* test.[14]

The Dewbres do not allege that the Air Force intended to pollute their property, located 2.4 miles away from the military base, or that the PFAS contamination "was the foreseeable or predictable result of the authorized use of [AFFF]." *See Moden*, 404 F.3d at 1343 & n.2. Indeed, although the military base's reported use of AFFF dates back to the 1970s, health and environmental concerns related to the forever chemicals used in manufacturing the fire retardant were not suspected until earlier this century. According to the complaint, moreover, the seepage of PFAS into the area soil and local water supply was not confirmed until 2018. Further, the Dewbres do not allege that the government appropriated a benefit in failing to prevent the alleged contamination of their land and water supply or passed along to them costs that otherwise would be borne by the Air Force. *See, e.g., Penna v. United States*, 153 Fed. Cl. 6, 24 (2021) ("[plaintiffs] have not presented any evidence that the government was required to dispose of AFFF (at the time of its use) in any particular manner, as the chemicals at issue were not, and are not, identified or regulated as hazardous by [applicable federal or state laws]"[15]) (citations omitted), *appeal dismissed*, No. 21-2079, 2022 WL 2208885 (Fed. Cir. Feb. 1, 2022). Indeed, as cautioned against in *Moden*, the Dewbres' claimed damages stem entirely from the reported drop in their property value. 404 F.3d at 1342. As such, their claims must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (ECF 10) is GRANTED. The Clerk of Court is directed to enter judgment accordingly. No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge

---

[14] The Court presumes, without deciding, that the Dewbres have a protected property interest in their land.

[15] *Penna* involved Pennsylvania state law. The New Mexico state legislature is currently considering laws banning PFAS in consumer products and regulating PFAS firefighting foams as hazardous waste. *See* Per- and Poly-Fluoroalkyl Substances Protection Act, H.B. 212, 57th Leg., 1st Sess. (N.M. 2025); Hazardous Waste Act (amendment), H.B. 140, 57th Leg., 1st Sess. (N.M. 2025).